**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| LEOPOLDO V. DOMINGUEZ | CIVIL ACTION NO. 5:13-2916 |
| VERSUS | JUDGE ELIZABETH ERNY FOOTE |
| TRINIDAD DRILLING, L.P. | MAGISTRATE JUDGE KAREN HAYES |

**MEMORANDUM RULING**

Before the Court is a Motion For Summary Judgment filed by Defendant, Trinidad Drilling, L.P. ("Trinidad") against Plaintiff, Leopoldo V. Dominguez ("Dominguez").[1] Dominguez opposed the motion, and the Defendant replied.[2] For the reasons that follow, the Defendant's motion is hereby **GRANTED**.

**BACKGROUND FACTS**

Dominguez is an American citizen of Hispanic descent.[3] He began work at Trinidad on December 12, 2007 as a derrickhand.[4] His job duties required him to work for twelve hour shifts each day for two weeks, followed by two weeks off duty.[5] While working at Trinidad, a driller at the company and his immediate supervisor, named Jonathan "Gabe" Beird ("Gabe"), referred to Dominguez as "Mexican," rather than using his name.[6] After

---

[1]Record Document 17.

[2]Record Documents 20 and 24.

[3]Record Document 20, p. 1.

[4]Record Document 17-2, p. 2.

[5]Id.

[6]Record Document 17-3, p. 67-9.

Dominguez threatened to report Gabe to management , Gabe stopped the name-calling.[7] Dominguez never reported this incident to management.[8]

On June 9, 2010, Dominguez reported to Gabe that he had hurt his back while working.[9] He told Gabe that he was taking Tylenol and was doing okay.[10] On June 16, 2010, Dominguez and Gabe had an argument, during which Gabe called Dominguez a "stupid wetback" and a "f****ing Mexican."[11] On July 16, 2010, Dominguez contacted Trinidad's human resources personnel and reported the incident in which Gabe had called him inappropriate names.[12] Trinidad investigated the incident and issued a disciplinary warning to Gabe.[13]

On June 30, 2010, after feeling back pain, Dominguez went to his personal physician, who released him to work without restrictions.[14] On July 7, 2010, after his two week off period, Dominguez returned to work.[15] On July 14, 2010, Dominguez reported to his tool "pusher," Wade Seacrest that he was injured.[16] Seacrest reported the injury to

---

[7]Id. at p. 73.

[8]Id.

[9]Id. at p. 56.

[10]Id.

[11]Id. at p. 63.

[12]Id. at p. 72.

[13]Record Document 17-4.

[14]Record Document 17-3, p. 104.

[15]Id. at p. 105.

[16]Id. at p. 106.

Trinidad, and a safetyman named Gary Rivers ("Rivers") told Dominguez not to work any more that evening.[17] The next day, Dominguez was examined at the Tyler Omega Clinic, where he was seen by a physician's assistant.[18] Dominguez was told he would have to come back to the clinic at a later time to see a doctor. While he was waiting for his appointment with the doctor at the clinic, he reported to Trinidad's Shreveport facility and worked "light duty" in the yard.[19]

On July 19, 2010, a Trinidad safetyman named Ian Young ("Young") took Dominguez to his doctor's appointment at the clinic.[20] The doctor examined Dominguez, took x-rays, and recommended light duty work for him.[21] Young asked the doctor not to give Dominguez light duty because he was only one day away from his two week off period. During the one day he had left to work, Dominguez did not do any actual work.[22] On August 2, 2010, during his two weeks off, Dominguez returned to his primary care physician, who examined him and recommended he return to full duty work.[23] Dominguez returned to work in the Shreveport facility yard.[24] While working there, Dominguez came into contact with an employee called "Bubba." Dominguez states that Bubba greeted him by saying, "Hey,

---

[17] Id. at p. 16.

[18] Record Document 17-3, pp. 37-38.

[19] Id. at p. 36.

[20] Id. at p. 110.

[21] Id.

[22] Id.

[23] Id. at p. 113.

[24] Id.

Mexican," and one time said, "I will never get another damn Mexican to work on my tractor."[25] Dominguez told Bubba to stop calling him such names, but he never reported the incident to Trinidad.[26]

On September 3, 2010, while working on the oil rig, Dominguez reported a back injury.[27] Trinidad again assigned Dominguez to work in the yard at the Shreveport facility, a light duty assignment.[28] On September 9, 2010, Dominguez, along with Trinidad personnel, returned to the doctor, where he was given a MRI.[29] Dominguez returned to work in the yard until the results of his MRI were obtained on September 13, 2010.[30] Those results indicated that he had a bulging disc in his back, and Dominguez was told that he would not be able to return to work.[31] Beginning September 14, 2010, Dominguez was placed on a worker's compensation leave of absence, and on November 30, 2010, he was placed on a Family and Medical Leave Act ("FMLA") leave of absence.[32] When his FMLA leave was exhausted, Dominguez's job was terminated because he was unable to return to work.[33]

---

[25] Record Document 17-3, p. 75.

[26] Id.

[27] Id. at p. 114.

[28] Id. at p. 117.

[29] Id. at p. 119.

[30] Id.

[31] Id. at p. 120.

[32] Record Document 17-3.

[33] Id.

Before he was fired from his job, Dominguez filed an Equal Employment Opportunity Commission ("EEOC") complaint on October 20, 2010. After he was fired from his job, Dominguez filed a Louisiana state worker's compensation claim against Trinidad. Dominguez's EEOC complaint, dated October 20, 2010, lists several claims and causes of action against Trinidad, including a Title VII hostile work environment claim.[34] Dominguez also stated in his EEOC complaint that "I was required to continue working after being injured while Anglo employees were immediately placed on light duty. Additionally, my supervisors were discharged when they failed to properly handle injury claims for Anglo employees, but no actions were taken when my injuries were not address [sic] properly."[35]

On January 12, 2014, Dominguez signed a Compromise Settlement, Receipt and Release (the "settlement agreement") with Trinidad, which settled his worker's compensation claim.[36] A section of the settlement agreement entitled "Release and Discharge" includes the following language:

> In consideration of the payments called for herein, EMPLOYEE completely releases and forever discharges EMPLOYER ... of and from any and all past, present, or future claims, demands, obligations, causes of action, wrongful death claims, damages, costs, losses of service ... whether based on tort, contract, statute, or other theory of recovery, which EMPLOYEE now has, or may hereafter accrue ... <u>on account of, or in any way growing out of, or which are the subject of that certain injury which EMPLOYEE sustained ... in the course and scope of his employment when EMPLOYEE sustained an injury to his back/neck</u>, as well as claims for any work related injuries incurred before the settlement is approved, and <u>anything else that occurred while EMPLOYEE was employed by EMPLOYER.</u>[37] (Emphasis added.)

---

[34]Record Document 34-2.

[35]Id.

[36]Record Document 17-5.

[37]Id. at p. 2.

The settlement agreement also states that "EMPLOYEE'S claims and causes of action arising out of the EEOC complaint against the employer are specifically reserved to EMPLOYEE."[38] On October 22, 2013, Dominguez filed this lawsuit against Trinidad, attaching his right to sue letter from the EEOC.[39] Trinidad then filed this motion for summary judgment.[40]

## LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. See id. at 322-323.

Once the movant carries its initial burden, it is incumbent upon the non-moving party to demonstrate the existence of a genuine dispute as to a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986); Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996)(citations omitted). Such a showing requires the non-moving

---

[38] Id. at p. 3.

[39] Record Document 1.

[40] Record Document 17.

party to come forward with "specific facts" showing there is a genuine issue for trial. Id. at 587. This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)(citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (citations omitted); Reid v. State Farm Mut. Auto Ins. Co., 784 F.2d 577, 578 (5th Cir. 1986)(the court must "review the facts drawing all inferences most favorable to the party opposing the motion").

## LAW AND ANALYSIS

Dominguez has listed four causes of action in this suit: (1) a hostile work environment claim, pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) a FMLA medical leave claim; (3) a Title VII disparate treatment claim; and (4) a FMLA and a Title VII retaliatory termination claim.[41] The Court will address each in turn.

### A.   Hostile Work Environment

Dominguez's first cause of action is a hostile work environment claim, pursuant to Title VII and is one of the claims made in his EEOC complaint. Title VII provides that "[i]t shall be an unlawful employment practice for an employer-(1) to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "The purposes of Title VII are to achieve equality of employment opportunity and to make

---

[41]Record Document 1.

persons whole for injuries suffered on account of unlawful employment discrimination." Floca v. Homcare Health Servs., Inc., 845 F.2d 108, 111 (5th Cir. 1988)(citations omitted).

A Plaintiff can establish a prima facie case of hostile work environment pursuant to Title VII by proving that (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002). For harassment on the basis of race to affect a term, condition or privilege of employment, it must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).

To be actionable, the work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim did perceive to be so." Faragher v. City of Boca Raton, 524 U.S. 775, 787 (1998)(citations omitted). In order to determine whether the victim's work environment was objectively offensive, courts must consider the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. Harris, 510 U.S. at 23.

Here, Dominguez details three separate incidents in which co-workers called him derogatory names based on his race. In the first, Gabe called him "Mexican" instead of his

given name.[42] Dominguez states that prior to this incident, Gabe "frequently" called him "Mexican."[43] However, Dominguez never reported these incidents to management because he felt that Gabe's behavior "wasn't that bad."[44] On June 16, 2010, Gabe called the Plaintiff a "stupid wetback" and a "f***ing Mexican."[45] On July 16, 2010, Dominguez reported Gabe's June 16, 2010 behavior to Trinidad's human resources department, and a warning was issued to Gabe.[46] In August or September of 2010, a foreman named "Bubba" at Trinidad's Shreveport facility greeted Dominguez by saying, "Hey, Mexican" and once said "I will never get another damn Mexican to work on my tractor."[47] After Dominguez threatened to report him to human resources, Bubba apologized and never said anything derogatory to him again.[48]

In his opposition to the motion to summary judgment, Dominguez alludes to other perpetrators of harassment, stating that he "never testified that only Bubba and Gabe called him names. He was only asked about those two persons at the deposition."[49] However, Dominguez has not taken the opportunity in his opposition or anywhere else in the record

---

[42] Record Document 17-3, p. 67.

[43] Id. at pp. 71-72.

[44] Id. at p. 73.

[45] Id. at pp. 63-64.

[46] Id. at p. 71.

[47] Id. at p. 75.

[48] Id.

[49] Record Document 20, p. 4. Plaintiff cites that part of the deposition wherein he states that Gabe "frequently," although not every day, would call him "Mexican." Record Document 17-3, p. 71.

to provide more specific allegations of racial discrimination by any other Trinidad employees. The Fifth Circuit has cautioned that "conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy" the nonmovant's burden in a motion for summary judgment. Eberle v. Gonzales, 240 F. App'x 622, 625 (5th Cir. 2007). Specifically, the Fifth Circuit found in a Title VII racial discrimination case that a claim of a pattern of harassment that lacked specific allegations or concrete examples of racial discrimination would fail. See Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002). Therefore, the Court will only consider specific allegations of racial harassment described by Dominguez to determine whether they violate Title VII.

The Court now turns to the five elements of the prima facie case that a Plaintiff must satisfy. The first two elements are clearly met: Dominguez is a member of a protected class and was subjected to unwelcome harassment. Calling a person "Mexican," "damn Mexican," "stupid wetback," and "f***ing Mexican" is clearly race-based harassment and satisfies the third element. The fourth element requires that the harassment be sufficiently pervasive to alter the conditions of employment and create an abusive working environment. A single incident of harassment, if sufficiently severe, could give rise to a viable Title VII claim, as could a continuous pattern of less severe incidents of harassment. E.E.O.C. v. WC&M Enter., Inc., 496 F.3d 393, 400 (5th Cir. 2007). The Fifth Circuit has stated that "a regular pattern of frequent verbal ridicule or insults sustained over time can constitute severe or pervasive harassment sufficient to violate Title VII." Id.

In Harilall v. Univ. Health Sys. Dev. Corp., the Fifth Circuit held that "[w]hile 'wetback' and 'illegal alien' are comments related to [the Plaintiff's] national origin, these isolated remarks do not constitute pervasive harassment actionable under Title VII." No.98-50652,

1999 WL 152923, at *4 (5th Cir. 1999). The Fifth Circuit has found that "the mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee does not affect the terms[,] conditions, or privileges of employment to a sufficiently significant degree to violate Title VII." Jones v. Flagship Intern., 793 F.2d 714, 720 (5th Cir. 1986)(citations omitted). The court in Harilall cites the Supreme Court's decision in Faragher, wherein the Court found that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." Id. (citing Faragher, 524 U.S. at 788).

Applying the Harris totality of the circumstances test, the Court notes that Dominguez has only described three incidents of harassment during his years of employment at Trinidad. Each of those incidents, although condemnable, involved only name calling and did not include any physical threats. Finally, those incidents did not seem to interfere with Dominguez's ability perform his abilities, as he often described them as "not that bad" and continued his work until his injuries. While the Court finds these incidents reprehensible and upsetting, under the totality of the circumstances, they are not sufficiently severe or pervasive as to alter the conditions of Dominguez's employment and create an abusive working environment. Therefore, the Court finds that the harassment suffered by Dominguez does not rise to the degree necessary to create an objectively offensive work environment for the purposes of Title VII.

Considering the above, the Court finds that Dominguez has failed to meet his prima facie burden for his claim of race-based workplace harassment pursuant to Title VII, and Defendant's motion for summary judgement based on Dominguez's first claim is GRANTED. Plaintiff's claim of race-based workplace harassment shall be DISMISSED.

### B.    FMLA Medical Leave Claim

Dominguez argues that Trinidad refused to provide him with immediate treatment for injuries he sustained while on the job in violation of the FMLA. As described above, Dominguez signed the settlement agreement on January 12, 2014, which included the following language:

> In consideration of the payments called for herein, EMPLOYEE completely releases and forever discharges EMPLOYER ... of and from any and all past, present, or future claims, demands, obligations, causes of action, wrongful death claims, damages, costs, losses of service ... whether based on tort, contract, statute, or other theory of recovery, which EMPLOYEE now has, or may hereafter accrue ... <u>on account of, or in any way growing out of, or which are the subject of that certain injury which EMPLOYEE sustained ... in the course and scope of his employment when EMPLOYEE sustained an injury to his back/neck</u>, as well as claims for any work related injuries incurred before the settlement is approved, and <u>anything else that occurred while EMPLOYEE was employed by EMPLOYER.</u>[50] (Emphasis added.)

Notably, this release contains broad and unambiguous language that compromises not just any cause of action arising out of the physical injuries Dominquez sustained, but also any other cause of action arising out of "anything else that occurred" while Dominquez was employed by Trinidad. The only limitation on this release of liability is Dominguez's reservation of his "claims and causes of action arising out of the EEOC complaint against [Trinidad]."[51] This specific reservation of rights is also unambiguous and modifies the broad language quoted above. As a result of the combination of these two sections of the release,

---

[50] Record Document 17-5.

[51] Id.

the only causes of action which remain viable for Dominquez as to Trinidad are those which are outlined specifically in the EEOC complaint.

The question now before this Court is whether any potential FMLA medical leave claim survives the execution of the compromise. In Mathis v. Pinnacle Entm't., Inc., this Court was presented with language in a settlement agreement that is very similar to but less broad than the language in the current settlement agreement. No. 11-2199, 2014 WL 2880217, at *4-5 (W.D. La. June 23, 2014). There, the release language lacked the language "and anything else that occurred while EMPLOYEE was employed by EMPLOYER." But, as in the present case, the Plaintiff carved out an additional claim and included a handwritten statement reserving his "unemployment claims," which the Court interpreted as covering his EEOC claims. Id. at *4. The Court found that the reservation of EEOC claims did not include a reservation of any FMLA claims because "the two types of claims spring from entirely separate sources of law and provide entirely different rights and remedies." Id. at *5. Additionally, as in this case, the reason for any FMLA leave was the work related injury. Therefore, the Court found that the Plaintiff's FMLA claims were barred under the parties' settlement agreement. Id.

Considering the unambiguous language of the settlement agreement and the holding in Mathis, the Court finds that Dominguez's FMLA medical leave claim is subject to the discharge provision contained in the settlement agreement and thus is barred by the terms of the settlement agreement. The settlement agreement clearly and explicitly manifests the intent of the parties to settle ALL Dominguez's claims against Trinidad except for those enumerated in the EEOC complaint, and therefore, Plaintiff's FMLA medical leave claim must be DISMISSED.

### C. Title VII Refusal to Provide Immediate Medical Treatment

In his third cause of action, Dominguez claims that Trinidad refused to provide him with immediate treatment for injuries that occurred during his employment because of his Mexican heritage. As discussed above, Dominguez reserved his right to sue Trinidad based on any causes of action arising out of his EEOC complaint. Dominguez's EEOC complaint includes claims for disparate treatment pursuant to Title VII on two bases: 1.) Trinidad's alleged refusal to allow Dominguez to be on light duty work, and 2.) Trinidad's alleged failure to provide him with medical treatment for his injuries.[52] Dominguez seems to have limited his cause of action in the present lawsuit to Trinidad's alleged failure to provide him with immediate medical treatment. The complaint contains no claim for disparate treatment as to his placement on light duty work.  However, the Court will, out of an abundance of caution, address both of Dominguez's EEOC claims of disparate treatment pursuant to Title VII.

To establish a discrimination claim under Title VII, a Plaintiff must first raise a genuine issue of material fact as to the following elements of a prima facie case of discrimination: (1) that he is a member of a protected class; (2) that he was qualified for the position; (3) that he suffered an adverse employment action, and (4) that similarly situated employees who were outside the Plaintiff's protected class were treated more favorably. Willis v. Coca Cola Enter., Inc., 445 F.3d 413, 420 (5th Cir. 2006)(citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973)). An adverse employment action includes an action by the employer that will affect an employee's compensation, terms, conditions, or privileges of employment. Silva v. Chertoff, 512 F.Supp. 2d 792, 803 (W.D. Tex.  2007).

---

[52] Record Document 32-1.

"Similarly situated" employees are employees who are treated more favorably in "nearly-identical circumstances." Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 259-60 (5th Cir. 2009). The Fifth Circuit has found that employees are not "similarly situated" when they have different supervisors, work in different divisions of a company, or have different work responsibilities. Employment actions will be deemed to have been taken under "nearly identical circumstances" when the employees being compared held the same job or responsibilities, shared the same supervisor, had their employment status determined by the same person, and have essentially comparable violation histories. Id. at 260. The Fifth Circuit has held that it is critical that the Plaintiff's conduct, which drew the adverse employment decision, must have been nearly identical to that of the proffered comparator who allegedly drew dissimilar employment decisions. Id.

In the present case, Plaintiff has identified five Anglo employees whom he states were injured and then placed immediately on light duty by Trinidad. They are identified in Dominguez's testimony as Scott, Logan, Blake, James and one other person who was not identified by name.[53] Dominguez stated that he believed Scott had a pulled muscle, Blake had a broken arm, Logan had a back injury, James had a hurt foot or ankle, and the unnamed worker had "something wrong" with his back.[54] Dominguez thought that they had all been injured on a rig but knew for sure that none of the other employees had the same

---

[53] Record Document 17-3, p. 42.

[54] Id. at pp. 42-47.

supervisors that he did.[55] Dominguez testified that he did not know if a doctor had placed any of the men on restricted light duty work.[56]

The court in Carpenter v. Gulf States Mfr., Inc. found that "[b]ecause the court only has the names of a portion of twelve allegedly injured white employees and a brief description of their disabilities, the court cannot say that the circumstances surrounding their cases were nearly identical." 764 F.Supp. 427, 435 (N.D. Miss. 1991). The court noted that there was no information presented by the Plaintiff about the extent of the other employees' disabilities, when those disabilities occurred, how the employer accommodated their injuries, the qualifications of the employees, or any possible doctor's restrictions on their employment. Id.

Here, Dominguez has testified that each of the comparable employees had a different supervisor and most had a different injury than he did. Of the two employees who he describes as having a back injury, Dominguez has not presented evidence that those men's back injuries were the same or similar to his injury. He has not provided information about the specific nature of the other employees' injuries, including when and how they occurred. He has not presented any evidence of those employees' doctors' restrictions or their specific jobs and qualifications. The Court is unable to determine with any degree of certainty whether the Anglo employees who were put on immediate light duty work upon their injuries were in any way similarly situated to Dominguez for the purposes of Title VII. In essence, Dominguez has simply provided the Court with the fact that at the time he was assigned to work in the yard of the Shreveport facility, there were other Anglo employees

---

[55]Id.

[56]Id.

who were injured and who worked inside the warehouse of the Shreveport facility. Following the court's holding in Carter, this is insufficient evidence for a finding of favorable treatment to similarly situated employees pursuant to Title VII. Therefore, the Court finds that Dominguez has failed to meet his prima facie burden. Dominguez's claim for disparate treatment under Title VII based on the immediacy of his light duty work shall be DISMISSED.

Dominguez has also alleged disparate treatment based upon the amount of time it took Trinidad to provide medical treatment for his on-the-job injuries. Dominguez's prima facie burden for a this claim is the same as that described above. Here, Dominguez has not named or presented evidence of any comparable employees who were treated differently (i.e. were sent to a doctor by Trinidad sooner than Dominguez).  As such, the Court finds that Dominguez has failed to meet his prima facie burden. Dominguez's claim for disparate treatment under Title VII based on the failure to provide timely medical treatment shall be DISMISSED.

### D.     FMLA and Title VII Retaliation Claim

Dominguez's fourth cause of action is a claim for retaliation under the FMLA and Title VII. Insofar as Dominguez is making a claim under the FMLA, that claim is barred by the settlement agreement, as described above, and shall be DISMISSED.

Insofar as Dominguez has made a retaliation claim against Trinidad under Title VII, the Court notes that he is limited under the settlement agreement to those claims that are in his EEOC complaint.[57] An examination of Dominguez's EEOC complaint indicates that he stated that "[o]n September 13, 2010, a Human Resources representative and the

---

[57]Record Document 17-5.

Safety Manager told me that because of my back injury, I was done with the company and I should not contact them again."[58] Unlike his hostile work environment claim and his disparate treatment claim under Title VII, this statement about the termination of his employment does not indicate that it was based on his race or national origin. In fact, it very clearly indicates that Dominguez was terminated because of his injury. The Court finds that Dominguez did not make a Title VII retaliation claim in his EEOC complaint. Therefore, the Court holds that Dominguez's retaliation claim pursuant to Title VII is barred under the settlement agreement and shall be DISMISSED.

## CONCLUSION

For the foregoing reasons, Defendant Trinidad's Motion for Summary Judgment [Record Document 17] is hereby **GRANTED**. The Plaintiff's claims against the Defendant are hereby **DISMISSED WITH PREJUDICE**.

A judgment consistent with the instant memorandum ruling shall issue herewith.

**THUS DONE AND SIGNED** in Shreveport, Louisiana this 23rd day of March, 2015.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE

---

[58]Record Document 34-2.